**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIAM CATO SELLS, JR., ) | 3:08-CV-170-BES (RAM) |
| Plaintiff, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | **OF U.S. MAGISTRATE JUDGE** |
| E.K. MCDANIEL, et al., ) | |
| Defendants. ) | |

This Report and Recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff's Motion for a Preliminary Injunction (Doc. #39[1]). Defendants have opposed (Doc. #44), and Plaintiff has replied (Doc. #49).

## I. BACKGROUND

At all relevant times, Plaintiff William Cato Sells, Jr. ("Sells") was in custody of the Nevada Department of Corrections (NDOC) as an inmate at Ely State Prison (ESP). Sells has filed a motion for a mandatory preliminary injunction to expunge his conviction for violating NDOC Regulation G-14 for failure to follow posted rules and regulations. (Doc. #39 at 4.) In his complaint, he alleges that has been falsely charged with this violation and that as a result, he has been denied reclassification from his current HRP (High Risk Potential) segregation status at ESP. (Doc. #12 [screening order].) Sells further alleges that this is likely to adversely

---

[1] Refers to court's docket number.

1

impact his parole eligibility. (Doc. #39 at 4.)

According to the Notice of Charges, the underlying incident occurred on February 16th, 2006, when Sells asked Defendant Correctional Caseworker Specialist I Renee Baker ("Baker") to deliver legal paperwork to another inmate. (Doc. #1-3 at 29.) Sells explained that the documents consisted of legal mail accidentally delivered to him. After Baker reviewed the papers with Associate Warden of Programs Adam Endel, they concluded that there was no evidence that the paperwork had been mailed to the prison, and instead that it had been produced by Sells for another inmate. A Preliminary Hearing Officer reviewed the Notice of Charges and Sells was served on February 21st, 2006. Sells was charged with General Violation-14 ("G-14"), "Failure to follow rules and regulations," and G-20, "Preparing, soliciting, or giving false or misleading information to or about a staff member and representing the statement as fact."

At a disciplinary hearing held on March 9th, 2006, Sells was found guilty of the G-14 violation and the G-20 violation was dismissed. The Disciplinary Hearing Summary indicates that "I/Ms [inmates] may help other I/Ms but must go through law library". (Doc. #1-3 at 32.) As a sanction, Sells received a verbal reprimand. The parties dispute whether Sells was given an opportunity to attend the hearing. (Doc. #39 at 4.) According to the Hearing Summary (Doc. #1-3 at 31), Sells refused to attend the hearing and a not guilty plea was entered on his behalf.

On August 11th, 2006, Sells's request for removal of his HRP status was denied. The notes to this hearing read, "He requested HRP removal and this was denied due to the recent NOC [notice of charges] on 2-17-06 G14. Cmte rx [committee recommends] remain HRP." (Doc. #1-4 at 16.)

While the complaint pleads multiple violations of Sells's rights under the federal and state constitutions[2], his motion for preliminary injunction is predicated on procedural due

---

[2] Based on these facts, Plaintiff alleges violations of his First, Fifth, Eighth, and Fourteenth Amendment rights under the United States Constitution, as well as various rights under the Nevada Constitution.

2

process under the Fourteenth Amendment. Sells claims that his rights were violated because he was not permitted to attend the disciplinary hearing, he was convicted for a different offense than with what he was charged, and there was no evidence supporting his conviction.

Defendants oppose the motion, arguing that Plaintiff has failed to demonstrate a strong likelihood of success on the merits of his claim or a possibility of irreparable harm. (Doc. #44 at 5-6.)

## **II. LEGAL STANDARD**

The Ninth Circuit uses two alternative tests to determine whether a temporary restraining order should issue. According to the "traditional test," the equitable criteria for granting preliminary injunctive relief are: (1) a strong likelihood of success on the merits; (2) the possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (3) a balance of hardships favoring the plaintiffs; and in certain cases (4) advancement of the public interest. *Beardslee v. Woodford*, 395 F.3d 1064, 1067 (9th Cir. 2005); *Textile Unlimited, Inc. v. A. BMH & Co., Inc.*, 240 F.3d 781, 786 (9th Cir.2001) (citing *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir.1980)). In the alternative, the Ninth Circuit uses a "sliding scale" or balancing test where injunctive relief is available to a party demonstrating either: (1) a combination of probable success on the merits and the possibility of irreparable harm; or (2) that serious questions are raised and the balance of hardships tips in its favor. *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir.2001) (citing *Prudential Real Estate Affiliates, Inc. v. PPR Realty, Inc.*, 204 F.3d 867, 874 (9th Cir.2000)). These last two criteria are "outer reaches 'of a single continuum.'" *Los Angeles Memorial Coliseum Comm.*, 634 F.2d at 1200-01 (internal citations omitted).

Under the Prison Litigation Reform Act (PLRA), additional requirements must be satisfied before granting injunctive relief against prison officials:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the

3

> principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). "Section 3626(a) ... operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal.*, 220 F.3d 987, 999 (9th Cir. 2000).

### III. DISCUSSION

**A.   LIKELIHOOD OF SUCCESS**

A likelihood of success on the merits of the procedural due process claim is the first factor to consider in deciding whether to grant the preliminary injunction. Under the Due Process Clause of the U.S. Constitution, a prisoner is entitled to certain procedural protections when he is charged with a disciplinary violation. *Wolff v. McDonnell*, 418 U.S. 539, 564-571 (1974). These protections include a written statement of the charges and a description of the evidence against the prisoner; an opportunity to call witnesses and present documentary evidence; and a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action taken. *Id.* However, these protections only apply when the disciplinary action implicates a protected liberty interest in some "unexpected matter" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. 472, 484 (1995).

The immediate consequence of the disciplinary hearing challenged by Sells is that he was given a verbal reprimand. Quite clearly, that is too insignificant a punishment to implicate his constitutional rights. But the hearing also served as the basis for denying his request to be removed from HRP status. The record establishes a direct causal relationship between the March disciplinary conviction and the denial of his reclassification request. (Doc. #1-4 at 16.) In a related case brought by Sells, this court recognized that he had a liberty interest in avoiding this classification. (Case No. 3:06-CV-23-LRH-VPC, Doc. #153, at 5.) The indefinite

4

continuation of HRP status is sufficient to invoke the protections of the Fourteenth Amendment. *See Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (finding a liberty interest in an indefinite term of restricted confinement with annual reviews). Therefore, the issue is whether Sells received the process he was due.

With respect to whether the claim that Sells was barred from attending the hearing, the evidence is inconclusive. Other than his own statements, Sells provides no evidence supporting his allegation. Defendants refer to a notation in the hearing record indicating that Sells refused to attend and that a "not guilty" plea was entered on his behalf. There is no direct evidence, however, of Sells waiving his right to the hearing. Moreover, it appears that Sells was willing to participate, based on his allegation that at some point during the day of the proceedings, he was contacted in his cell via intercom by Correctional Officer Waggener and asked if he had any proof that the legal documents had been mailed. (Doc. #1-3 at 8.) Plaintiff alleges that he indicated that he had a signed mail receipt and that once this was verified, the G-20 charge was dismissed. This exchange is partially corroborated by the record of the proceedings, which indicates that the G-20 charge was indeed dismissed, though no further explanation is given. (*Id.* at 32.) It is unclear why Sells would refuse to attend his hearing but then offer exculpatory evidence to dismiss one of his charges. At this stage of the proceedings, the factual issue of whether Sells chose not to appear at his disciplinary hearing remains unresolved.

It is also unclear whether Sells received an adequate notice of the charges against him. Sells appears to have been disciplined for a different offense than what he was ultimately charged with. He was originally charged with a G-20 violation, allegedly for misleading Caseworker Baker about the nature of the document he was requesting that she deliver. He was simultaneously charged with a G-14 violation, essentially a catch-all provision for the failure to follow any posted rule or regulation. With respect to the G-14 violation, there is no indication in the Notice of Charges of precisely which rule or regulation Sells failed to follow. Therefore, it is reasonable to conclude that the offense underlying the G-14 violation was Sells's

G-20 offense.[3] At the disciplinary hearing, however, the underlying G-20 violation was dismissed, but Sells was still convicted for violating Rule G-14. Again, it is unclear from the record what posted rule Sells failed to follow, as no rule notation appears. The "Prison presentation" section of the document reads, "Inmate Sells had legal work belonging to Inmate Dowdell.... I/Ms [inmates] may help other I/Ms but must go through law library." This suggests that Sells was sanctioned for a different reason than what was indicated in the Notice of Charges – that he rendered legal assistance without going through the appropriate channels.[4] Given the lack of clarity in charging Sells, even had he attended the disciplinary hearing, he could have prepared to argue his case with respect to the G-14 violation assuming it arose from the G-20 violation, only to find at the hearing that prison administrators had decided to base the G-14 violation on a different rule. Assuming such a scenario, a disciplinary process that leaves the prisoner unprepared to address the charges against him cannot satisfy the requirements of the Due Process clause. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a *meaningful* manner." *Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893 (1976) (emphasis added). Based on the limited

---

[3] This is supported by the "Report of Violation" in the Notice of Charges, which suggests that Caseworker Baker did not believe that Sells had been honest when he claimed that the papers had been erroneously mailed to him:

> After reviewing the paperwork in more detail with AWP Endel, there is no proof that the legal papers were sent to ESP through the mail. It appears that the papers may have been produced by I/M Sells for I/M Dowdell and I/M Sells was trying to get the finished product delivered to I/M Dowdell #60821 that [sic] lives in 2A41A.

(Doc. #1-3 at 29.) Obviously, there is some element of redundancy to charging Sells for violating a prison rule and separately for failing to follow the posted rules in general. However, no other rule provision is referenced by the Notice of Charges.

[4] Presumably, this is based on Administrative Regulation (AR) 722, which prohibits an inmate from rendering any legal assistance to others when they are housed in different segregation units and requiring the assisting inmate to relinquish all legal materials. This provision was mentioned by Defendants' counsel at the motion hearing. Plaintiff's exhibits also include a memo written by Prison Director Glen Whorton discussing the application to AR 722.04 to a grievance filed after the disciplinary hearing. (Doc. #1-4 at 11.) Defendants' opposition indicates that Plaintiff was sanctioned for the unauthorized possession of another inmate's legal papers, which is consistent with violating AR 722. *See, e.g.,* Doc. #44 at 5. Sells cited to AR 722.04 in the inmate statement portion of report of the initial report (Doc. #1-3 at 30). However, AR 722 is never mentioned as the rule that Sells violated anywhere in the record of the disciplinary proceedings, and more importantly, does not appear to be the rule he was originally charged with violating.

record before it, the court finds a possibility of success on the merits.

**B.   IRREPARABLE INJURY**

The second factor for the court to consider is the possibility of irreparable injury to the plaintiff should the court deny the request relief to expunge the G-14 conviction. That conviction has already been used to deny his reclassification request. *See supra*. Assuming the parole hearing occurs at the regularly scheduled time discussed at the motion hearing, this will occur before an injunction could issue, so the parole board could theoretically rely on the disciplinary conviction in denying Sells parole. Therefore, the more immediate consequences of the disciplinary proceedings will be visited upon the plaintiff regardless of whether the injunction is granted.

There are, however, other consequences from the offense, such as the possibility that it could be a factor in denying Sells parole or reclassification in the future. In the companion case, the court found evidence that HRP status could be one factor among many in a Nevada parole determination, but it was unclear whether this status precluded a prisoner from parole. (Case No. 3:06-CV-23-LRH-VPC, Doc. #141, at 11.)  Additionally, according to prison regulations, a disciplinary offense precludes one's HRP status from being removed for a minimum of one year. That period has now passed, so Sells is again eligible to be reclassified to the general population, and his classification is reviewed semi-annually. However, it is impossible to determine what continuing role the conviction could play in Sells's reclassification, as the Warden retains the sole discretion to remove HRP status and could consider this past offense.[5] The effect of the G-14 offense on Sells's confinement is therefore uncertain, especially in light of evidence that Sells has had other disciplinary problems. (*Id.* at 10 (observing that in 2004, the parole board denied his request based on an "extremely poor" disciplinary record).)  Therefore, the court finds this factor to be neutral.

---

[5] This court has found that there is no apparent trend in the cases where the Warden has granted HRP removal, suggesting this occurs on a subjective, case-by-case basis. (Case No. 3:06-CV-23-LRH-VPC, Doc. #141, at 17.) The Warden has indicated that he views any published criteria for HRP status as permissive. *Id*. A classification committee makes a recommendation regarding HRP removal based on a set of guidelines, but this recommendation can and has been overruled by the Warden. *Id.*

7

## C. BALANCE OF HARDSHIPS

Finally, the balance of hardships in this case favors Sells. There is no apparent irreparable harm that will befall Defendants if an injunction is granted, as Defendants do not argue any in their opposition. Presumably, prison administrators would have to make an administrative change to Sells's disciplinary records to temporarily expunge the G-14 violation until the resolution of these proceedings. Even after giving substantial deference to the operational interests of the prison system as mandated by the PLRA when considering injunctive relief, the impact on Defendants is relatively insignificant. Should this court deny the injunction, however, Sells will continue to have this offense on his disciplinary record the next time he requests a status reclassification or for parole, with the potential adverse consequences discussed above. While this hardship is not overwhelming, the balance tips in the plaintiff's favor.

Under the sliding scale analysis followed by this circuit, the court finds that this is a case where "serious questions" are raised in favor of the injunction. The possibility of irreparable injury is uncertain, but for reasons that are largely out of Sells's control. The balance of hardships, however, suggests the injunction should be granted. "The crucial element ... is the relative hardship to the parties. If the balance of harms tips decidedly toward the plaintiff, then the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Benda v. Grand Lodge of Int'l Ass'n of Machinists and Aerospace Workers*, 584 F.2d 308, 315 (9th Cir. 1978). Irrespective of the claim that Sells was denied a hearing outright, there is some possibility of success on the merits of the claim that he received an inadequate notice of the charges against him. After weighing the factors, the court finds that the requested injunction to expunge the plaintiff's G-14 conviction should be granted.

///
///
///
///

8

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING** Plaintiff's Motion for a Preliminary Injunction (Doc. #39).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: April 9, 2009.

_____
UNITED STATES MAGISTRATE JUDGE