**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| WILLIAM SELLS, | 3:08-CV-170-BES (RAM) |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| vs. | **OF U.S. MAGISTRATE JUDGE** |
| E.K. McDANIEL, et al., | |
| Defendants. | |

This Report and Recommendation is made to the Honorable Brian E. Sandoval, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Defendants' Motion for Summary Judgment (Doc. #46[1]). Plaintiff has opposed (Doc. #67), and Defendants have replied (Doc. #78.) After a thorough review, the court recommends that the motion be granted in part and denied in part.

## I. BACKGROUND

This is a prisoner civil rights complaint brought under 42 U.S.C. § 1983. At all relevant times, Plaintiff William Sells ("Plaintiff") was an inmate in custody of the Nevada Department of Corrections ("NDOC") at Ely State Prison ("ESP"). Plaintiff brings a number of claims related to a disciplinary conviction he received while at ESP in 2006. Defendants are E.K. McDaniel, the Warden at ESP; Adam Endel, the Associate Warden of Programs at ESP; Howard Skolnik, the Department Director; and Gregory Cox, the Assistant Director of

---

[1] Refers to the court's docket number.

1

Operations.

The complaint stems from Plaintiff's March 2006 disciplinary conviction for violating NDOC Regulation G-14, failure to follow posted rules and regulations. (Pl.'s Mtn. for Prelim. Inj. (Doc. #39) 4.) He alleges that he was falsely charged in retaliation for his previous litigation activities challenging his current HRP (High Risk Potential) segregation status, as well as the fact that he had been providing legal assistance to a fellow inmate. (Screening Order (Doc. #12) 3.) As a result, Plaintiff alleges that he has been denied reclassification to the general population at ESP. (*Id.*)   The facts relating to Plaintiff's disciplinary conviction were summarized in this court's previous Report and Recommendation regarding a request for preliminary injunctive relief (Doc. #64). They are reproduced below:

According to the Notice of Charges, the underlying incident occurred on February 16th, 2006, when Sells asked Defendant Correctional Caseworker Specialist Renee Baker ("Baker") to deliver legal paperwork to another inmate. (Pl.'s Compl. (Doc. #1-3) 29.) Sells explained that the documents consisted of legal mail accidentally delivered to him. After Baker reviewed the papers with Associate Warden of Programs Adam Endel, they concluded that there was no evidence that the paperwork had been mailed to the prison, and instead that it had been produced by Sells for another inmate. A Preliminary Hearing Officer reviewed the Notice of Charges and Sells was served on February 21st, 2006. Sells was charged with General Violation-14 ("G-14"), "Failure to follow rules and regulations," and G-20, "Preparing, soliciting, or giving false or misleading information to or about a staff member and representing the statement as fact."

At a disciplinary hearing held on March 9th, 2006, Sells was found guilty of the G-14 violation and the G-20 violation was dismissed. The Disciplinary Hearing Summary indicates that "I/Ms [inmates] may help other I/Ms but must go through law library". (Mtn. for Prelim. Inj. 32.) As a sanction, Sells received a verbal reprimand. The parties dispute whether Sells was given an opportunity to attend the hearing. (*Id.* at 4.) According to the Hearing Summary, Sells refused to attend the hearing and a not guilty plea was entered on his behalf.

1  (Doc. #1-3 at 31.)

2  On August 11th, 2006, Sells's request for removal of his HRP status was denied. The
3  notes to this hearing read, "He requested HRP removal and this was denied due to the recent
4  NOC [notice of charges] on 2-17-06 G14. Cmte rx [committee recommends] remain HRP."
5  (Compl. 16.)

6  After thoroughly reviewing the papers, the court construes the complaint as follows[2]:

7  Count I alleges that Defendant Endel instructed Caseworker Baker to initiate the Notice
8  of Charges against Plaintiff in retaliation for assisting a fellow inmate. (Pl.'s Civ. Rts. Compl.
9  (Doc. #1-3) 8, 9-10.) Based on this allegation, Plaintiff claims a violation of his First
10 Amendment rights.

11 Count II alleges a procedural due process violation when Defendant Endel failed to
12 respond to or process a grievance filed by Plaintiff regarding the Notice of Charges. (*Id.* at 10.)
13 Sells also claims that his rights were violated because he was not permitted to attend the
14 disciplinary hearing, he was convicted for a different offense than what he was charged, and
15 that there is no evidence supporting his conviction.[3]

16 Count III alleges that in a further act of retaliation for Plaintiff rendering assistance to
17 a fellow inmate, Defendant Endel revoked the Classification Committee's standing
18 recommendation to remove Plaintiff from HRP segregation status using Plaintiff's G-14
19 violation as a pretext.

20 / / /

21

---

22 [2] Many counts of the complaint contain a listing of references to multiple state laws, state constitutional
23 provisions, prison administrative regulations, and federal constitutional provisions without any explanation
whatsoever of how the provision was violated. *See, e.g.,* Pl.'s Compl. (Doc. #1-3) at 11 (listing more than ten
24 separate provisions that were violated by the prison's failure to respond to his grievance). Each provision will not
be considered to raise a separate claim. As was the case when the complaint initially screened under 28 U.S.C.
25 § 1915A (Doc. #12), the court recognizes only those claims where it is able to discern from the face of the complaint
the precise nature of the violation of law and how this occurred.

26 [3] The merits of Plaintiff's claims in relation to his disciplinary hearing are discussed in a previous Report
27 and Recommendation (Doc. #64.) Defendants did not object to the Report, and this court adopted its findings
and ordered that preliminary injunctive relief be granted.

28

3

Count IV alleges that in a continuing act of retaliation, Defendant Endel refuses to correct Plaintiff's erroneous G-14 conviction.

Count V alleges that Defendants Skolnik and Cox denied Plaintiff his procedural due process rights when they prevented him from appealing his G-14 conviction.

Count VI alleges that Defendants McDaniel, Cox, and Skolnik frequently make false representations in responding to Plaintiff's grievances, presumably when he attempted to challenge his disciplinary conviction.

Count VII alleges that Defendants continue to retaliate against Plaintiff for exercising his constitutional right to challenge his HRP status. In particular, he claims that he remains HRP segregated for prevailing in a previous lawsuit and because he was granted parole. (Oppo. to Summ. J. (Doc. #67) 11.)

Count VIII alleges that Plaintiff's ongoing nine-year commitment to HRP status has resulted in the loss of a significant liberty interest. This section of the complaint provides an extended recitation of the loss of privileges and conditions of confinement associated with this status. (Pl.'s Compl. 15-17.) Plaintiff further alleges that the revocation of the standing recommendation for removal from HRP status was "an act of malice and evil motive" to retaliate against Plaintiff for exercising his constitutional rights. (*Id.* at 17.)

Counts IX and X allege that Defendants negligently inflicted emotional distress on Plaintiff.

Count XI alleges causes of action against Defendants based on malice per se under Nevada Revised Statutes (NRS) 41.332.

Count XII alleges that Defendants' confinement to HRP segregation status is not authorized by any NDOC regulation, in violation of various provisions of NRS Chapter 209.

Count XIII alleges a cause of action based on NRS 209.361, which authorizes prison disciplinary sanctions based on the severity and type of violation. Plaintiff contends that his G-14 conviction was not punishable by a continuation of HRP segregation status.

///

4

Count XIV alleges a cause of action based on a violation of NRS 209.371, which prohibits corporal punishment and inhumane treatment of offenders.

Count XV alleges a cause of action based on a violation of NRS 212.010(1), which provides that, "Every person sentenced to imprisonment in any penal institution is under the protection of the law, and any unauthorized injury to his person shall be punished in the same manner as if he were not so convicted or sentenced."

Finally, Count XVI alleges that Defendants violated a duty created by NRS 212.020 not to oppress or be willfully inhumane toward a prisoner.

## II. LEGAL STANDARD

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute over the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). All reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 244 (1986)). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Id.* (citing Fed.R.Civ.P. 56(c)). Where reasonable minds could differ on the material facts at issue, however, summary judgment is not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, 516 U.S. 1171 (1996). In deciding whether to grant summary judgment, the court must view all evidence and any inferences arising from the evidence in the light most favorable to the nonmoving party. *Bagdadi*, 84 F.3d at 1197. In doing so, the court must defer to the professional judgment of prison administrators when an inmate civil rights complaint is involved. *Beard v. Banks*, 548 U.S. 521, 526, 530, 126 S.Ct. 2572, 65 L.Ed.2d 697 (2006); *Overton v. Bazzetta*, 539 U.S. 126, 132, 123 S.Ct. 2162, 156 L.Ed.2d 162 (2003).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden,

5

1  the party opposing the motion may not rest upon mere allegations or denials of the pleadings,
2  but must set forth specific facts showing there is a genuine issue for trial. *Anderson,* 477 U.S.
3  at 248. Although the parties may submit evidence in an inadmissible form, only evidence
4  which might be admissible at trial may be considered by a trial court in ruling on a motion for
5  summary judgment. Fed. R. Civ. P. 56(c).

6        In evaluating the appropriateness of summary judgment, three steps are necessary: (1)
7  determining whether a fact is material; (2) determining whether there is a genuine issue for the
8  trier of fact, as determined by the documents submitted to the court; and (3) considering that
9  evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to
10 materiality, only disputes over facts that might affect the outcome of the suit under the
11 governing law will properly preclude the entry of summary judgment; factual disputes which
12 are irrelevant or unnecessary will not be considered. *Id*. Where there is a complete failure of
13 proof concerning an essential element of the nonmoving party's case, all other facts are
14 rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*,
15 477 U.S. at 323.

16                                 **III. DISCUSSION**

17       Defendants move for summary judgment dismissing Plaintiff's entire complaint. The
18 court will address each of Defendants' contentions in turn.

19 **A.    RETALIATION CLAIMS**

20       Prisoners have a right to meaningful access to the courts, and prison authorities may not
21 penalize or retaliate against an inmate for exercising this right. *Bradley v. Hall*, 64 F.3d 1276,
22 1279 (9th Cir. 1995). A retaliation claim contains five elements: "(1) An assertion that a state
23 actor took some adverse action against an inmate (2) because of (3) that prisoner's protected
24 conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights,
25 and (5) the action did not advance a legitimate correctional goal." *Rhodes v. Robinson*, 408
26 F.3d 559, 567-68 (9th Cir. 2004). The protected conduct should be a "substantial" or
27 "motivating" factor in the retaliatory actions. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*,
28

                                          6

429 U.S. 274, 283-84 (1977). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct of which he complains." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995).

### 1. Count I

This claim alleges that Defendant Endel directed Caseworker Baker to file the Notice of Charges against Plaintiff for assisting Inmate Dowdell. (Compl. 8, at ¶ 34.) Plaintiff, however, was not engaged in protected conduct in this incident. When the Notice of Charges issued, Caseworker Baker believed that Sells has been dishonest with her when he claimed that the papers had been erroneously mailed to him.[4] As a result, Plaintiff was originally charged with a G-20 violation for lying to a correctional officer. There is no protected speech interest in such behavior. Therefore as a matter of law, Plaintiff cannot predicate his retaliation claim on Defendants' perception that they had been misled by him, regardless of whether that perception was later determined to be erroneous.

Even if the G-20 violation was mere pretext, and the court accepts Plaintiff's allegation that prison officials were reacting to the fact that he had been rendering assistance to another inmate, Defendants can offer a legitimate penological justification for initiating disciplinary proceedings. Administrative Regulation (AR) 722.04 ¶ 1.3.3 prohibits as inmate from possessing the legal materials of another when "administrative segregation . . . prevents direct communication between the inmates". (Mtn. for Summ. J., Ex. C.) At the relevant time,

---

[4] This is supported by the "Report of Violation" in the Notice of Charges, which reads:

> Inmate Sells handed me legal paperwork with Inmate Richard Dowdell #60821 name on it. . . . I/M Sells stated that NDOC staff had accidentally delivered him I/M Dowdell's legal mail - I asked him why he didn't return it right away to staff that delivered it to him and he said he did not notice it until later . . . . After reviewing the paperwork in more detail with AWP Endel, there is no proof that the legal papers were sent to ESP through the mail. It appears that the papers may have been produced by I/M Sells for I/M Dowdell and I/M Sells was trying to get the finished product delivered to I/M Dowdell #60821 that lives in 2A41A.

(Pl.'s Compl. (Doc. #1-3) 29.) To the extent that prison officials initially believed that the form was never sent to the prison, they were incorrect. *See infra* n.5. Nevertheless, Plaintiff had still violated a prison regulation by being in possession of and working on the legal materials of another inmate located in a separate unit of the prison. *Id*.

7

Inmate Dowdell was confined in a separate unit from Plaintiff, who was HRP segregated. The hearing officer ultimately concluded that, ""Inmate Sells had legal work belonging to Inmate Dowdell.... I/Ms [inmates] may help other I/Ms but must go through law library." (Compl. (Doc. #1-3) 32.) Plaintiff does not deny being in possession of the completed legal documents, and instead repeatedly claims that he has the right to render legal assistance. *See, e.g.,* Compl. 9, at ¶ 33. Even assuming that Inmate Dowdell's legal materials were erroneously mailed to Plaintiff[5], he was not permitted by the regulations to retain the paperwork and complete it on behalf of a fellow inmate. This also suggests that Plaintiff was misleading Caseworker Baker when he explained that the reason that he delayed returning the form was because he had failed to notice it was not addressed to him, as he Plaintiff had taken time to complete the form. Therefore, there is at least some evidence to support Defendants' contention that the disciplinary conviction served a legitimate penological purpose.

Other courts have recognized a prison's valid interest in regulating legal assistance between inmates. In *Shaw v. Murphy*, the Supreme Court declined to accord any heightened First Amendment protection in this context. 532 U.S. 223, 231, 121 S.Ct. 1475, 1480, 149 L.Ed.2d 420 (2001). It recognized that restrictions on legal correspondence between inmates were appropriate given that it could be used as a means for passing contraband, communicating messages regarding weapons or drugs, or making inappropriate comments that could circulate among the inmate population. *Id.* The same rationale applies to the regulation at issue in this case, which prevented inmates from possessing the legal materials of another when housed in a segregated unit of the prison.

---

[5] Defendants submit unrefuted evidence that the Nevada Supreme Court mailed Inmate Dowdell legal correspondence on January 24th, 2006. Inmate Dowdell signed for legal mail from the Nevada Supreme Court on January 27th, 2006. Plaintiff claims that the form was erroneously mailed to him by the Nevada Supreme Court and delivered on February 10th, 2006. (Mtn. Summ. J. 10-11.) In his opposition, Plaintiff does not address the initial mailing to Inmate Dowdell or, assuming the truth of his allegations, the seventeen-day delay in receiving the form after it was erroneously mailed to him. Furthermore, Plaintiff appears to have conceded that he eventually completed the form on behalf of Inmate Dowdell despite it being erroneously mailed to him, which would have been prohibited by the regulations. Since Plaintiff could have no authorized contact with Inmate Dowdell due to their physical separation in different units, Plaintiff likely would have needed to retain Inmate Dowdell's other legal work to complete the form in addition to the form itself.

In light of the prison's valid interest in regulating legal assistance between inmates, and the undisputed evidence underlying Plaintiff's disciplinary charge, he cannot demonstrate "the absence of legitimate correctional goals for the conduct of which he complains." *Pratt*, 65 F.3d at 806. Therefore, summary judgment should be granted on Count I dismissing the claim.

### 2. Count IV

Count IV alleges an ongoing retaliation theory based on Defendant Endel's refusal to reverse the Notice of Charges or the G-14 conviction. However, the penological justifications discussed above still support the disciplinary action. As above, given the undisputed evidence underlying the conviction, Plaintiff cannot carry his burden to demonstrate an "absence of legitimate correctional goals" in the conduct he is now challenging.

Moreover, there is no evidence that Defendants' conduct has actually chilled the exercise of Plaintiff's First Amendment rights. Notably, Plaintiff continues to litigate his claims in a companion proceeding before this court (Case No. 3:06-CV-23-LRH-VPC), the Ninth Circuit Court of Appeals (Case No. 09015450), and the Seventh Judicial District Court in White Pine County, Nevada (Case No. CF-0801001). In the absence of a factual disagreement regarding whether Plaintiff has proven the elements of his cause of action, the claim should be dismissed.

### 3. Count III

Plaintiff alleges that Defendant Endel retaliated against him by revoking the Classification Committee's standing recommendation to release him from HRP segregation. This contention appears to be factually incorrect, as the record indicates that it was a committee decision to recommend that Plaintiff remain segregated from the general population rather than Defendant Endel's unilateral act. (Compl. (Doc. #1-4) 16.) Moreover, Defendants could assert a legitimate penological justification for retaining this classification based on Plaintiff's disciplinary conviction, and none of the numerous exhibits cited by Plaintiff suggest otherwise. The Institutional Procedures (IPs) at ESP allow the Classification Committee to exercise its discretion in making an HRP recommendation, and it would not be unreasonable for this to include a recent disciplinary conviction. (Pl.'s App. of Exs. (Doc. #68) 11 [IP 4.34]

1 ("Consideration for H.R.P. classification may include but is not limited to the following . . . .").)
2 Finally, Plaintiff cannot provide any evidence demonstrating that he actually suffered an
3 "adverse action" by the prison as a result of the revoked recommendation. Even if Defendant
4 Endel or the Classification Committee decided to recommend that Plaintiff remain on
5 segregated status out of retaliatory animus, it is the Warden who retains the sole discretion to
6 remove HRP status.[6] There is no evidence in the record that the Committee's recommendation
7 was a factor in the Warden's decision to maintain Plaintiff's classification. Because Plaintiff has
8 not presented evidence to establish a factual disagreement regarding whether Defendants acted
9 with retaliatory animus or whether he suffered an adverse action, the court grants summary
10 judgment on this claim.

### 4. Count VII

12 This count of the complaint fails to establish precisely what adverse action Plaintiff has
13 suffered as a result of his prior litigation activities. In his opposition, Plaintiff clarifies that he
14 is alleging that his continued HRP status is due to a pending lawsuit and because has been
15 granted parole. Neither contention is actionable in this case. Plaintiff references two favorable
16 judgments he received in his companion case before this court (Oppo. 11), but these occurred
17 several months after he filed the complaint in this action. Similarly, he was granted parole well
18 after the pleadings.[7] After reviewing the exhibits included with Plaintiff's opposition, the court
19 concludes that he completely fails to submit any evidence demonstrating a causal relationship
20 between *any* prior litigation activities and his HRP status. At this stage of the proceedings, a
21 party may not rest on mere allegations or denials in the pleadings. *Anderson*, 477 U.S. at 248.
22 As above, Plaintiff also fails to explain how his First Amendment exercise has been diminished

---

[6] A classification committee makes a recommendation regarding HRP removal based on a set of guidelines, but this recommendation can and has been overruled by the Warden. *See* Case No. 3:06-CV-23-LRH-VPC, August 20, 2008 Report and Recommendation (Doc. #141), at 17. The Warden has indicated that he views any published criteria for HRP status as permissive. *Id*.

[7] Plaintiff was recently paroled. *See* Notice of Change of Address (Doc.#83); NDOC Inmate Detail Record, http://www.doc.nv.gov/notis/detail.php?offender_id=42483 (last visited August 4, 2009).

Case 3:08-cv-00170-RCJ-WGC   Document 84   Filed 08/06/09   Page 11 of 17

Case 3:08-cv-00170-RCJ-WGC   Document 84   Filed 08/06/09   Page 11 of 17

as a result of the alleged conduct. Therefore, Plaintiff's motion for summary judgment should be granted on this claim.

### 5. Count VIII

The bulk of this count consists of a lengthy enumeration of the restricted privileges and conditions of confinement associated with Plaintiff's HRP status. This is not at issue, as the court recognized that a liberty interest is implicated by Plaintiff's HRP classification. (Case No. 3:06-CV-23-LRH-VPC, Doc. #153, at 5.) Plaintiff goes on to allege that "Defendants, [by] rescinding Plaintiff's standing recommendation for removal from HRP segregation, constitute a significant liberty interest, and was done in an act of malice and evil motive . . . . " (Compl. (Doc. #1-3) 18, at ¶ 71.) This allegation is similar to the one in Count III, which was dismissed.

Plaintiff also contends that defendants have "adopt[ed] regulations, without the approval of the Nevada State Board of Prison Commissioners, in a continuing conspiracy, to retaliate against the Plaintiff, for exercising his inalienable constitutional rights . . . ." (*Id.* at ¶ 72.) This claim lacks merit, as Plaintiff does not identify the retaliatory regulations they supposedly enacted[8]. The complaint cites to thirteen exhibits, which consist *inter alia* of Plaintiff's grievances submitted to the prison, a printout of his chrono entries, various affidavits and summons, and what appears to be a publication discussing the risk factors related to granting parole. These also include copies of the Administrative Regulations pertaining to Non-Law Clerks Assisting Other Inmates (Doc. #1-4 at 25 [AR 722.04]) and the Inmate Grievance Procedure (Doc. #1-5 at 2 [AR 740]). However, each AR consists of multiple provisions, and the court will not cull through these regulations to supply a retaliation theory for Plaintiff. In any case, it is highly unlikely that either regulation could evidence retaliatory animus toward Plaintiff, as they actually establish procedures for an inmate to exercise his right to present his claims against the prison. The opposition to the motion for summary judgment

---

[8] Plaintiff does provide as an example a requirement that a prisoner only be allowed to possess a calendar for the current year only, but he fails to offer any discussion regarding the allegedly retaliatory nature of this regulation. (Pl.'s Compl. (Doc. #1-3) 18:1-2.)

11

1  on this claim is not well-taken, as it merely refers the reader to a docket entry for the
2  companion case without any further explanation. Because of its apparently frivolous nature,
3  this claim should be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B)(I) (authorizing sua sponte
4  dismissal of a claim at any time the court determines that the action is frivolous or malicious).

**B.    PROCEDURAL DUE PROCESS CLAIMS**

   **1.    Count II and VI**

Count II alleges a procedural due process violation based on Defendant Endel's failure to respond to his grievances. However, a prison grievance procedure does not give rise to a liberty interest protected by the Fourteenth Amendment. *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993). Therefore, Plaintiff has no legitimate claim of entitlement under the Constitution. *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988).

This claim also alleges that Plaintiff was denied procedural due process at his disciplinary hearing. In considering Plaintiff's claim for injunctive relief, this court determined that certain minimal procedural protections applied to the disciplinary hearing under the Due Process Clause. (Doc. #64 at 5) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-70 (1974)). The court determined that factual questions remained whether (1) Plaintiff was allowed to attend his disciplinary hearing and (2) whether he received adequate notice of the charges against him. (*Id.* at 6-7.) At this stage of the proceedings, these questions remain unresolved, as neither party addresses this issue in their briefs.[9] Therefore, summary judgment should be denied on this Count.

Count VI alleges that prison officials routinely make false representations to Plaintiff when responding to prison grievances. As discussed above, a prisoner has no constitutionally protected interest in an effective grievance procedure. *Mann*, 835 F.2d 640. Therefore, even

---

[9] Qualified immunity does not apply in this case because the procedural protections recognized by the Supreme Court in *Wolff v. McDonnell* were well established when the hearing occurred. "Qualified immunity protects government officials . . . from liability for civil damages insofar as their conduct does not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." *Phillips v. Hust*, 477 F.3d 1070, 1079 (9th Cir. 2007) (emphasis added).

12

assuming that prison officials were deliberately misleading in their grievance responses, this could not provide a basis for a constitutional claim. Furthermore, there is no apparent cognizable injury from the alleged conduct or that the court is able to conceive of, which suggests that Plaintiff lack standing to even bring such a claim. Therefore, summary judgment should be granted.

### 2. Counts V

Plaintiff alleges a procedural due process violation based on certain Defendants' failure to allow him to appeal his disciplinary conviction. The procedural protections for inmate disciplinary hearings established in *Wolff v. McDonnell* did not include a mandatory appeal from a disciplinary hearing. Indeed, the prison procedures considered in that case did not include an appeal, but the Court did not find that this violated due process. *Id.* at 565, 94 S.Ct. at 2979; *see also Brown v. Angelone*, 938 F.Supp. 340, 345 (W.D.Va. 1996). It does not appear that Plaintiff has such a right even under Nevada law. The regulations identified by Plaintiff in his complaint relate to the inmate grievance procedure. They do not provide that an inmate may appeal his disciplinary conviction. Even if Plaintiff had such a right, this would state a claim for a violation of state law, not the Fourteenth Amendment. Therefore, this claim should be dismissed.

## C. EMOTIONAL DISTRESS CLAIMS

Counts IX and X allege that Defendants' conduct caused Plaintiff emotional distress. The PLRA states that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). Plaintiff does not allege any such physical injury in the pleadings and did not address these claims in his opposition to the motion for summary judgment. Therefore, the motion for summary judgment should be granted dismissing this claim.

/ / /

/ / /

**D.   REMAINING STATE LAW CLAIMS**

Counts X through XVI plead claims based on violations of state law. In many of these counts, Plaintiff incorporates the entire preceding complaint by reference, references the state law provision (often without actually quoting the provision), states that the provision has been violated without any further explanation, and concludes that Plaintiff is entitled to damages. *See* Compl. (Doc. #1-3) 19-22. Even when construed liberally, this abbreviated style of pleading falls far below the Rule 8(a) notice pleading standard, which requires the plaintiff to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (internal quotations and citation omitted). The global reference to the complaint and the lack of supporting detail provides absolutely no notice for the prison officials to defend the claims against them.

After considering the issues raised by Plaintiff in his opposition to the instant motion[10], the court construes these claims as challenging Defendants' conduct with respect to initially placing Plaintiff on HRP segregation, retaining this designation for several years, and extending the period of Plaintiff's segregation following the disciplinary conviction. Even assuming Plaintiff has stated a cognizable claim, however, Defendants can claim immunity from liability.

The State of Nevada has generally waived its sovereign immunity. *Martinez v. Maruszczak*, 168 P.3d 720, 723 (Nev. 2007) (citing Nev. Rev. St. § 41.031). However, a statutory exception to this waiver grants immunity to officials exercising discretionary functions:

> [N]o action may be brought ... against an immune contractor or an officer or employee of the state or any of its agencies or political subdivisions which is:
> ...
> 2. Based upon the exercise or performance or the failure to exercise or perform

---

[10] Some of the issues raised in the opposition are not contained in the pleadings. For example, the discussion for Count XII raises the issue of Plaintiff's initial transfer to ESP, which is not addressed in the complaint. Similarly, the discussion for Count XIV for the first time in this lawsuit alleges that Plaintiff contracted Hepatitis C from the leg restraints used at the prison. (Oppo. 13-14.) Plaintiff did not properly seek leave to amend his complaint to make these allegations, and they according will be disregarded by the court.

> a discretionary function or duty on the part of the state or any of its agencies or political subdivisions or of any officer, employee or immune contractor of any of these, whether or not the discretion involved is abused.

Nev. Rev. St. § 41.032. The Nevada Supreme Court has adopted a two-part test to determine whether officials acts are protected by discretionary immunity: "[T]o fall within the scope of discretionary-act immunity, a decision must (1) involve an element of individual judgment or choice and (2) be based on considerations of social, economic, or political policy." *See Martinez*, 168 P.3d at 727 (citing *United States v. Gaubert*, 499 U.S. 315 (1991); *Berkovitz v. United States*, 486 U.S. 531 (1988)). Plaintiff does not address the applicability of this defense in his opposition to the instant motion.

Under the first prong of this test, the relevant conduct by prison officials is best characterized as a discretionary rather than ministerial in nature. In evaluating whether Plaintiff should be initially placed on and remain in HRP segregation, for example, the classification committee and the Warden had to consider such factors as Plaintiff's past behavior and his suitability among the prison's general population. Such an assessment is distinguishable from a ministerial act, which is characterized by following orders or performing a duty involving minimal decisionmaking by the individual officer. *See Board of County Comm'rs v. Cirac*, 98 Nev. 57, 60, 639 P.2d 538, 539 (1982) (citations omitted), *abrogated on other grounds by Martinez*, 123 Nev. 433, 168 P.3d 720.

Turning to the second prong of the analysis, the court notes that it "must assess cases on their facts, keeping in mind [the purposes of] the exception: 'to prevent judicial "second guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Martinez*, 168 P.3d at 729 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)). The state Supreme Court has characterized the decision to parole a prisoner as qualifying for discretionary-act immunity. *Butler ex rel. Biller v. Bayer*, 123 Nev. 450, ---, 168 P.3d 1055, 1067 (Nev. 2007). The decision to place and retain an inmate in HRP segregation is functionally similar to a parole decision, as both involve a judgment of an inmate's likelihood

of future behavioral problems based on past conduct. The process of classifying an inmate is described in the prison's institutional procedures as follows:

> The purpose of classification to provide for the efficient and effective use of limited resources and programs, and to assist in the appropriate placement, and reintegration of offenders into the community. Individuals will be classified according to the degree of security and control required to achieve treatment and custody objectives. . . .
> Committees shall be guided by the principle that offenders shall be assigned to the lowest level of custody necessary to protect the community and control the inmates behavior.

(Pl. App. Exs. 16-17 [IP 5.01].) The Classification Committee therefore considers several policy objectives in deciding whether to place an inmate in HRP segregation. This suggests that these decisions have the type of administrative character that qualifies for discretionary immunity.

Furthermore, exposing prison officials to potential legal liability based on their decision to segregate a prisoner could have an adverse impact on prison administration. Officials could not effectively discharge their duties if they were burdened by the possibility that their classification decisions could be considered tortious acts under state law. Preventing an intrusion by the judicial branch into a complex administrative decision like the segregation of an inmate would therefore accomplish the intent of the Nevada legislature in adopting NRS 41.032. Of course, Plaintiff retains the right to vindicate his civil rights under federal law through a § 1983 action. *Ortega v. Reyna*, 114 Nev. 55, 62, 953 P.2d 18, 23 (1998), *abrogated on other grounds by Martinez*, 123 Nev. 433, 168 P.3d 720.

Because Plaintiff has failed to raise any material issues of fact concerning whether prison officials were performing a discretionary function, the court should grant summary judgment on the state law claims alleged in Counts 11 through 16.

### E.     PERSONS AMENABLE TO SUIT UNDER 42 U.S.C. § 1983

A state official sued in his or her official capacity for damages is not a person subject to suit under § 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). To the extent that Plaintiff alleges a damages claim against Defendants in their official capacities, those claims should be dismissed from the lawsuit.

### IV. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that the District Judge enter an Order **GRANTING IN PART and DENYING IN PART** Defendants' Motion for Summary Judgment (Doc. #46) as follows:

- Counts I and III through XVI should be dismissed;
- The federal claims against Defendants in their official capacities for money damages in Count II should be dismissed; and
- The motion for summary judgment on Count II of the complaint should be denied.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within ten (10) days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1), Fed. R. Civ. P., should not be filed until entry of the District Court's judgment.

DATED: August 6, 2009.

_____
UNITED STATES MAGISTRATE JUDGE